UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States,<br><br>    Plaintiff<br>v.<br><br>Robert Folsom,<br><br>    Defendant | Case No.: 2:17-cr-00176-JAD-VCF<br><br>**Order Denying Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255**<br><br>[ECF No. 208] |

Defendant Robert Folsom pled guilty to one count of possession with the intent to distribute a controlled substance and was sentenced to imprisonment for 12 months and one day and three years of supervised release.[1] He appealed,[2] and the Ninth Circuit affirmed.[3] Folsom now seeks habeas relief under 28 U.S.C. § 2255.[4] Because his motion contains no legal argument for modification or vacatur of his sentence and the record conclusively establishes that he is not entitled to the relief he seeks, I deny his motion.

**Discussion**

A federal prisoner may attack the legality of his conviction under 28 U.S.C. § 2255 by showing that "the sentence was imposed in violation of the Constitution or the laws of the United States," "the court was without jurisdiction to impose such a sentence," the sentence was in "excess of the maximum authorized by law," or the sentence is "otherwise subject to collateral attack."[5] If the court so finds, it must "vacate and set the judgment aside and . . . discharge the

---

[1] ECF No. 164 (binding plea agreement); ECF No. 174 (judgment).
[2] ECF No. 175.
[3] ECF No. 207.
[4] ECF No. 208.
[5] 28 U.S.C. § 2255(a).

prisoner[,] resentence him[,] grant a new trial[,] or correct the sentence as may appear appropriate."[6] A prisoner filing a claim for federal habeas relief under § 2255 is entitled to service upon the United States Attorney and an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[7] No evidentiary hearing is warranted if the petitioner's "allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."[8]

      Folsom's two-page habeas petition centers around his oft-repeated assertion that he is a "non-citizen national," arguing that his prior attorney Paul Riddle "colluded" with the court and the prosecutor to deny him "exoneration" that he believes he is entitled to because, he claims, he is not a citizen of the United States.[9] He contends that, at a hearing on May 3, 2021, I told him that I "would exonerate [him] if [he] provided proof of [his] non-citizen[-]national" status and everyone involved in his case subsequently "misled [him] from constitutional judicial process that was needed for [him] to be exonerated."[10] He also contends that Tony Abbatangelo, the attorney who represented him before Paul Riddle, knew that he would not defend Folsom's "non-citizen national" theories for eight months but did not withdraw, thereby delaying Folsom's case.[11] And finally, Folsom contends that his wife was coerced into convincing him to accept a

---

[6] *Id.* at § 2255(b).

[7] *Id.*; *see also United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) ("We have characterized this standard as requiring an evidentiary hearing where 'the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'") (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).

[8] *Id.* (cleaned up). I find this motion suitable for resolution without an evidentiary hearing.

[9] ECF No. 208.

[10] *Id.* at 1.

[11] *Id.* at 2.

2

guilty plea and that Riddle coerced him too.[12]  Liberally construed as ineffective-assistance-of-counsel and involuntary-plea claims, I find that the files and records of this case show that Folsom is not entitled to relief.

**A.     Folsom does not meet the threshold to show ineffective assistance of counsel.**

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[13]  Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance.'"[14]  In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[15] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[16]  Both prongs of the *Strickland* inquiry must be satisfied to establish constitutionally ineffective assistance of counsel; a failure to satisfy either requires that the petitioner's claim be denied.[17]  Federal courts need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong."[18]  Conversely, courts "need not determine whether counsel's performance

---

[12] *Id.*

[13] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[14] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[15] *Strickland*, 466 U.S. at 690.

[16] *Id.* at 694.

[17] *Id.* at 697.

[18] *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir.), *cert. denied*, 525 U.S. 839 (1998).

3

was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[19]

Folsom's contention that his attorneys were ineffective boils down to his continued frustration that they would not pursue his "non-citizen[-]national" theories in his case. As I made clear in an earlier hearing on this topic, Folsom's theories have been universally rejected by every court to consider them.[20] If Folsom's attorneys had pursued those frivolous theories on his behalf, they would likely have violated their ethical and professional obligations to this court.[21] That his attorneys chose to withdraw rather than advance "utterly meritless" theories in his defense was the objectively reasonable and professional course of conduct.[22]

Folsom's assertion that his counsel "colluded" with the court and the prosecution about the process to be exonerated based on his non-citizen-national status is pure fantasy. During the May 3, 2021, hearing that Folsom alludes to, I gave Folsom the opportunity to make any arguments concerning his belief that he is a non-citizen national and that such a status entitled him to exoneration.[23] After he was given an opportunity to respond to the government's opposition to those arguments, I informed him that his theories were frivolous, explained the

---

[19] *Strickland*, 466 U.S. at 697.

[20] *See*, *e.g.*, *United States v. Marks*, 530 F.3d 799 (9th Cir. 2008) (rejecting arguments concerning the federal courts' jurisdiction over individuals who label themselves "sovereign citizens"); *United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986) (characterizing similar theories as "utterly meritless" and noting that they have been "consistently and thoroughly rejected by every branch of government for decades").

[21] *See* Nev. Rule of Pro. Conduct 3.1 (stating that "[a] lawyer [must] not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous"); *see also* L.R. IA 11-7(a) (stating that all attorneys admitted to practice in this court "must adhere to the standards of conduct prescribed by" the Nevada Rules of Professional Conduct).

[22] *Studley*, 783 F.2d at 937 n.3.

[23] *See* ECF No. 203 at 5–11.

authority that imbues this court with jurisdiction over him and his criminal charges, and denied his request to represent himself because he only wished to proceed pro se to advance his non-citizen-national theories before the jury, which he would not be permitted to do.[24]  At no point did I, defense counsel, or the prosecutor tell Folsom that he would be exonerated if he "provided proof" that he is a non-citizen national.  The record thus does not support any relief based on counsel's or the court's representations at the May 3, 2021, hearing.

Finally, Folsom's contention that Abbatangelo delayed his case by failing to withdraw from his defense at an earlier time is meritless.  Folsom contends that Abbatangelo "refused to step down for 8 months knowing that he couldn't" advance Folsom's sovereign-citizen theories and thus delayed the court process.[25]  Abbatangelo entered his appearance as defense counsel on April 12, 2019.[26]  Throughout his tenure as Folsom's attorney, the record reflects that Abbatangelo and members of his firm met with Folsom on numerous occasions, filed motions on his behalf, and steadfastly pursued plea negotiations with the prosecution.[27]  Indeed, Abbatangelo also filed a motion requesting a status conference to discuss Folsom's contention that he is not a citizen subject to this court's jurisdiction and attached Folsom's alleged documentation of his non-citizen-national status.[28]  I addressed those arguments for the first time in March 2020, and informed Folsom that they were meritless.[29]  At that point, the COVID pandemic required that the court pause jury trials, resulting in an approximately eight-month

---

[24] *Id.* at 32–37.
[25] ECF No. 208 at 2.
[26] ECF No. 52.
[27] See, *e.g.*, ECF No. 55; ECF No. 61; ECF No. 62; ECF No. 85.
[28] ECF No. 91.
[29] *See* ECF No. 96.

5

continuation of Folsom's case.[30]  A couple of weeks before trial was set to commence, the parties stipulated to one more continuance to negotiate a new plea offer that the government had extended.[31]  Seven days later, Abbatangelo moved to withdraw as Folsom's attorney, noting that "a significant, material difference of opinion regarding legal strategy has emerged" between him and Folsom "such that [Abbatangelo] would be compelled to advance a position at trial that would be contrary to established law."[32]  Counsel's representation of Folsom throughout this time and in the face of Folsom's untenable legal theories certainly meets the objective standard of reasonableness.  And the majority of the "delay" Folsom complains of was due to the COVID pandemic and its impact on court processes, not to Abbatangelo's refusal to advance Folsom's sovereign-citizen arguments.  So I find that Folsom's liberally construed ineffective-assistance-of-counsel arguments do not entitle him to relief.

**B.     Folsom knowingly and voluntarily entered into his plea agreement.**

"A plea agreement is made knowingly if the defendant understands the terms and, to a certain extent, the consequences of the agreement."[33]  And "[a] plea agreement is made voluntarily if the defendant is not 'induced by promises or threats' to enter the agreement."[34]  Folsom contends that someone named Peter Lazarro[35] told his wife that "pleading was in [Folsom's] best interest, and threatened that if [he] didn't plead guilty, [he'd] be taken away

---

[30] *See id.*, ECF No. 100.

[31] ECF No. 119.

[32] ECF No. 121-1 at 2.

[33] *United States v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022).

[34] *Id.* (quoting *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007)).

[35] Folsom does not specify who this person is.  I note that he is not listed as an attorney of record for either party to this case.

from [his] family [for] close to ten years."[36]  He then claims that his counsel Paul Riddle "gave [his] wife the phone number to the federal facility to coerce [him] to plead guilty."[37]  He also contends that Riddle "never informed [him] of the *Daubert* hearings or the motions in limine" his counsel filed, which he considers "two very important factors [to his] winning his case."[38]

The Ninth Circuit considered and rejected Folsom's coerced-plea argument on direct appeal, noting that "the record does not support [his] pro se contention that his plea was not knowing and voluntary."[39]  Folsom fails to point to any part of the record that demonstrates otherwise.  The allegations he advances here do not demonstrate coercion or threat; at most they indicate that his attorney encouraged him to accept a favorable plea agreement.  And at the hearing concerning Folsom's plea agreement, I informed him of the charges against him, the consequences of his plea, the rights he would waive if he pled guilty, and the government's burden of proof if he were to go to trial.[40]  I asked him if he discussed the agreement with his attorney and understood all of its terms.[41]  I informed him that by pleading guilty he was waiving his right to appeal and collaterally attack his conviction, with a few exceptions.[42]  He replied to all of these questions with unequivocal yeses and confirmed that no one had threatened or coerced him to plead guilty.[43]  And whether or not his counsel informed him of the pending motions in limine does not overcome the fact that Folsom repeatedly asserted that he understood

---

[36] ECF No. 208 at 2.
[37] *Id.*
[38] *Id.*
[39] ECF No. 207 at 2.
[40] *See generally* ECF No. 169 (plea-agreement hearing transcript).
[41] *Id.*
[42] *Id.*
[43] *Id.*

the terms and consequences of his plea and entered into it willingly. So I find that record in this case demonstrates that Folsom is not entitled to habeas relief, and I deny his motion.[44]

## C. Certificate of appealability

To appeal this order, Folsom needs a certificate of appealability from a circuit or district judge.[45] In deciding whether to grant one, I consider if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[46] Although this standard is "lenient,"[47] I find that Folsom does not meet it. So I deny him a certificate of appealability.

## Conclusion

IT IS THEREFORE ORDERED that defendant Robert Folsom's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence **[ECF No. 208] is DENIED.** A certificate of appealability is **DENIED**. The Clerk of Court is directed **to enter a separate civil judgment denying Folsom's § 2255 motion and denying a certificate of appealability**.

_____
U.S. District Judge Jennifer A. Dorsey
January 5, 2023

---

[44] To the extent that Folsom intended to raise other grounds in this collateral-review proceeding, I note that he signed a plea agreement in which he waived "all collateral challenges, including any claims under 28 U.S.C. § 2255, to [his] conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel." ECF No. 164 at 11. The Ninth Circuit has also held that a defendant cannot waive challenges to the knowing and voluntary nature of his plea or waiver. *Rodriguez*, 49 F.4th at 1212. Because I find that Folsom voluntarily entered into his plea agreement and was informed of its impact on his collateral-attack rights, I conclude that he waived any grounds for relief not based on alleged ineffective assistance of counsel or the involuntary nature of his plea.

[45] 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1).

[46] *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quotation marks omitted).

[47] *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc).

8